IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

MARK LEE SEAGRAVES,
             Plaintiff,

         v.

DAVID TREACHLER,

             Defendant.

Civil Action
No. 15-7801 (JBS-AMD)

**MEMORANDUM OPINION**

---

This matter comes before the Court on Plaintiff Mark Lee Seagrave's ("Plaintiff") motion for default judgment [Docket Item 15]; Defendant David Treachler's ("Defendant") motion to vacate default judgment pursuant to Fed. R. Civ. P. 55(c), to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and/or for summary judgment pursuant to Fed. R. Civ. P. 56 [Docket Items 16 and 17]; and Plaintiff's motion to stay [Docket Item 19].[1]

Plaintiff filed his Complaint on October 30, 2015 [Docket Item 1] and Summons was issued as to Defendant David Treachler on April 11, 2016. [Docket Item 9.] Defendant was duly served on June 1, 2016; his answer or motion pursuant to Fed. R. Civ. P.

---

[1] Plaintiff's Motion to Stay also includes his request for leave to amend his complaint and a motion to amend the complaint. [Docket Item 19 at 1.] Because Plaintiff also filed a Motion to Amend the Complaint [Docket Item 20], which will be addressed in a separate opinion, the Court will treat Plaintiff's Motion to Stay solely as a motion to stay and will consider his requests for leave to amend the complaint and his motion to amend the complaint contained therein with the formal Motion to Amend the Complaint [Docket Item 20].

12 was due by June 22, 2016. [Docket Item 12.] Defendant failed
to file such answer or motion on or before that date. Plaintiff
requested default against Defendant on July 5, 2016, which the
clerk entered on that date. [Docket Item 14.] Plaintiff then
filed his motion for entry of default judgment on August 17,
2016. [Docket Item 15.] On August 20, 2016, Defendant David
Treachler (as well as former named defendants Sheriff's Office
of Salem County; State of New Jersey; County of Salem, New
Jersey; and Raymond Skradzinski (collectively, "Salem County
Defendants")) moved to vacate the default judgment and to
dismiss the complaint for failure to state a claim upon which
relief can be granted, or, in the alternative, for summary
judgment [Docket Item 16] and a supporting certification on
August 30, 2016 [Docket Item 21]. Plaintiff filed, in response,
a Motion to Stay [Docket Item 19] and an affidavit in response
to Defendant's Motion [Docket Item 22].

For the following reasons, the Court will deny Plaintiff's
motion for default judgment, grant Defendant's motion to vacate
the default judgment, deny Defendant's motion to dismiss and/or
for summary judgment, and dismiss Plaintiff's request for a stay
as moot.

1. According to the Complaint, Plaintiff was, at the time
of the complained-of conduct, a pretrial detainee at the Salem
County Correctional Facility in Woodstown, Salem County, New

2

Jersey. [Docket Item 1 at 1.] He filed this § 1983 action against Defendant, the chaplain at the correctional facility, after he requested a vegetarian diet from Defendant because Plaintiff is a Muslim, and Defendant denied his request. [Id. at 4.] Plaintiff complains that he is prevented from practicing his religion properly because he cannot eat the meat that he is served on his meal trays for religious reasons. [Id. at 4, 8.]

2. Defendant claims that the entry of default should be set aside for good cause shown, pursuant to Fed. R. Civ. P. 55(c), based on excusable neglect and because Salem County Defendants have a viable defense. [Docket Item 16-2 at 2.] Defendant claims that "an abbreviated timeframe was established for the remaining Defendant to plead or otherwise move and the undersigned counsel was never served with notice of Plaintiff and the Clerk acting to enter the Defendant's default." (Id.) As stated in the Summons that was served on Defendant on June 1, 2016, Defendant was ordered to file an answer or motion under Fed. R. Civ. P. 12 within 21 days of the date of service. [Docket Item 12 at 2.] The Federal Rules of Civil Procedure state that a "defendant must serve an answer . . . within 21 days after being served with the summons and complaint[.]" Fed. R. Civ. P. 12(a)(1)(A)(i).

3. Fed. R. Civ. P. 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a

3

default judgment under Rule 60(b)." Pursuant to Fed. R. Civ. P. 60(b), "[o]n motion and just terms, the court may relieve a party . . . from a final judgment" for "excusable neglect" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1) and (4). While judgments based on default are disfavored, the decision of whether to set aside an entry of default under Rule 55(c) is left to the discretion of the district court. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984). "[D]oubtful cases [are] to be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'" Id. (citing Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951)).

4. In exercising its discretion to vacate entry of a default or a default judgment, the Court must consider (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct. United States v. $ 55,518.05 in U.S. Currency, 728 F.2d, supra, at 194-195. Applying these factors to the instant case, the Court concludes the default judgment should be set aside and Plaintiff's motion for default should be denied. Plaintiff also consents to the setting aside of his motion for default judgment. [Docket Item 22 at 4.]

5. Defendants state that a representative of the Salem County Correctional Facility was served by the U.S. Marshal's Office on June 2, 2016. Defendant's counsel avers that he downloaded a Civil Docket Sheet on June 20, 2016 but inadvertently failed to notice the Court's Order dated March 29, 2016 [Docket Item 6 at 2], wherein the Court ordered Defendants to respond to Plaintiff's remaining claims "within the time specified by Federal Rule of Civil Procedure 12." [Docket Item 16-3 at 1.][2] Defendant's counsel states that, at the time he downloaded the docket sheet, Plaintiff had not yet requested a default judgment, and because Defendant's counsel had not yet entered an appearance or filed anything in the case, he was not notified when Plaintiff did request default judgment and the clerk entered it on July 5, 2016. [Id. at 1-2.] Defendant's counsel submits that when Plaintiff filed the Motion for Default Judgment, this caused him to look anew at the case "in close detail" at which time he discovered that he had not filed an answering pleading in a timely manner; for this, Defendant's

---

[2] Defendant's Counsel misstates the procedural history of this case when he states that he "failed to note Judge Simandle's order from April [emphasis added] which set specific timeframes on the filing of an answer to Plaintiff's complaint against the one remaining party, Mr. David Treachler." [Docket Item 16-3 at 1.] While the Court did issue an order in April [Docket Item 11], it did not set out the timeframe for Defendant to respond to the Complaint as the March order did.

counsel submits that such failure constituted "excusable
neglect." [Id.]

6. Plaintiff will not be prejudiced. While the default was
entered almost two months after the Court's March order, it was
only entered one month after Defendant was served and
approximately two weeks after the deadline for Defendant to
Respond. [Docket Items 12 and 14.] Defendants moved to vacate
the default judgment only three days after Plaintiff filed the
Motion for Default Judgment. The Third Circuit has previously
held that "[d]elay in realizing satisfaction on a claim rarely
serves to establish the degree of prejudice sufficient to
prevent the opening [of] a default [] entered at an early stage
of the proceeding." Feliciano v. Reliant Tooling Co., 691 F.2d
653, 657 (3d Cir. 1982). There is no reason to think that
Plaintiff might suffer the "loss of available evidence,
increased potential for fraud or collusion, or substantial
reliance on the judgment to support a finding of prejudice." Id.

7. Defendant has claimed a meritorious defense. Although
Defendant has not yet filed an Answer, Defendant has requested
that the Complaint be dismissed, or, in the alternative, that
Defendant be granted summary judgment. [Docket Items 16 & 17.]
The Court will discuss these in further detail below, but the
Court does find that there are triable issues of fact in this
case and Plaintiff's ultimate success on the merits is far from

clear. This is not the case where a defendant seeks to establish a defense only from conclusory allegations. Cf. U.S. v. $55,518.05, 728 F.2d, supra, at 196. Defendant seeks to defend himself substantively against Plaintiff's claims and the Court is inclined to allow him to do so.

8. The default was not the result of Defendant's culpable conduct. The mistake here seems to have been a matter of inadvertence, and not dilatory conduct or conduct otherwise intended to cause harm or prejudice Plaintiff, "such as willful or bad faith conduct or deliberate trial strategy." Dambach v. United States, 211 Fed. Appx. 105, 110 (3d Cir. 2006) (internal citations omitted). The response was filed very quickly (within three days) after Plaintiff's Motion for Default Judgment, per Defendant's counsel's telling, alerted him to the previous failure to respond.

9. Even were some of these issues more in doubt, the Court is "require[d]," as the Third Circuit has stated, to "resolve[ the issue] in favor of the party moving to set aside the default judgment so that cases may be decided on their merit." U.S. v. $55,518.05, 728 F.2d, supra, at 195-96.

10. For those reasons, the Court will GRANT IN PART that aspect of Defendant's Motion which seeks to vacate the default judgment and permit Defendant to "plead or otherwise defend" in this action, Fed. R. Civ. P. 55(a). Accordingly, the Court will

7

DENY Plaintiff's Motion for Default Judgment as moot.

11. Defendant also moves to dismiss Plaintiff's Complaint, or in the alternative, for summary judgment. [Docket Item 16-2 at 1.] Because Defendant and Plaintiff both bring in facts and exhibits beyond the pleadings, the Court will consider Defendant's Motion under the summary judgment standard of Rule 56. Fed. R. Civ. P. 12(d).

12. At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at

248.

13. Defendant claims that he is entitled to summary judgment because he and his employer the County of Salem "only had a legal obligation to provide Plaintiff a special diet based on medical condition or a bona fide religious practice" and that Plaintiff, as a Muslim, did not require vegetarian meals but rather only meals that were pork-free. [Docket Item 16-2 at 2-3.]

14. Defendant states that his and County of Salem's obligation under N.J.A.C. 10A:31-10.4 was met by S.C.C.F's provision of pork-free meals to Muslim inmates like Plaintiff, notwithstanding that the meat in those meals was not halal. [Docket Item 16-4 at 1-2.] Raymond Skradzinski, warden of S.C.C.F at the relevant times, states that "[u]pon information and belief, being a muslim or follower of Muhammad and the Quran does not mandate a vegetarian diet." [Id. at 2.] Because Plaintiff did not, to their minds, indicate a medical need or a "bona fide religious practice" requiring vegetarian meals, Defendant and S.C.C.F. did not provide him with vegetarian meals. [Docket Item 16-1 at 2.]

15. Warden Skradzinski elaborated upon the above "information and belief" in a supplemental affidavit, saying: "To establish a proper policy for serving meals to Muslim inmates I have relied upon widespread, well-reasoned and well-

researched texts available on the internet concerning the
dictates of the Quran." [Docket Item 21 at 1.] He cited an
article published at http://www.quran-
islam.org/articles/halal_meat_(P1156).html. This article
suggests that "those who prohibit anything that was not
specifically prohibited in the Quran" "displease[s]" God; that
the Quran specifically outlines which animals are permissible to
eat (halal) and which are not (haram); that "Halal meat as is
understood these days is a term used more often for commercial
profits than religious observance"; that the Quran states that
food that Jews and Christians eat is "halal"; that, despite the
teachings of "Muslims [sic] scholars" that "the name of God must
be uttered on [an animal] before slaughtering it" to make it
halal, an individual Muslim may simply substitute saying God's
name on the animal at the time of eating it; and that holding
the Muslim consumer responsible for the butcher's failure to say
the name of God while slaughtering the animal would be contrary
to the Quran's teaching that people are "accountable only to
their own work" (emphasis in original). [Docket Item 21 at 2-3.]
The Court will refer to this article as "the Quran-Islam
article."

    16. In response, Plaintiff's affidavit states, "Being
Muslim does not mandate a vegetarian diet, but being Muslim does
mandate that we only eat meat that at the time of slaughtering,

Allah's name is mentioned," citing several attached provisions
of the Quran. [Docket Item 22 at 2, ] He states that the website
used by the Defendant "is not proven to be recognized by Islamic
Scholars" and "is giving false information about the Quran." He
continues: "I also say that if the defense rel[ies] on internet
websites because they say ["]true["] in the name, then they are
out of touch with reality because anyone can put anything they
want on the internet with no verification of what [they are]
saying is true." [Id. at 3.] Plaintiff also contests Defendant's
use of the Quran-Islam article's translations of the relevant
Quranic texts and provides copies of the provisions in the
translation of the Quran by Dr. Muhammad Taqi-ud-Din al-Hilali
and Dr. Muhammad Muhsin Khan, which Plaintiff alleges to be
respected and widely accepted for English speakers. [Id. at 6-9,
2-3.]

17. One text in the translation of the Quran provided by
Plaintiff states: "Forbidden to you (for food) are: . . . the
meat of that which has been slaughtered as a sacrifice for
others than Allah, or has been slaughtered for idols etc., or on
which Allah's name has not been mentioned while slaughtering . .
." [Id. at 7.] Another provision states: "Eat not (O believers)
of that (meat) on which Allah's Name has not been pronounced (at
the time of the slaughtering of the animal), for sure it is
'Fisq' (a sin and disobedience of Allah)." [Id. at 8.]

11

18. The Court notes that, on the front or home page of the Quran-Islam website, located at http://www.quran-islam.org/home_(P1).html, the title of the page is "True Islam" followed by a subtitle: "True Islam is derived from the Quran and not from the traditions or cultures of Muslim people[.]" This suggests that the website and articles contained on it may contain teachings that are "not from" and indeed may be contrary to "the traditions or cultures of Muslim people." The tone and diction of the article also suggests that it contradicts the teachings of "Muslim scholars" where it propounds, instead, what it states to be a strict textual reading of the Quran.

19. As the Third Circuit has stated, "We have long held that prisoners generally are entitled to religiously acceptable meals while in prison." Potts v. Holt, 617 Fed. Appx. 148, 150 (3d Cir. 2015). Precedent suggests that Muslim dietary restrictions are not as simple as being free of pork. See, e.g., Patel v. U.S. Bureau of Prisons, 515 F.3d 807 (8th Cir. 2008) (describing "a halal (or 'lawful') diet, which prohibits the consumption of pork and other items deemed haram (or 'unlawful')[,]" some forms of which "are stricter than others"); Abdulhaseeb v. Calbone, 600 F.3d 1301 (10th Cir. 2010) (prisoner established a genuine issue of material fact as to whether failure to provide him with halal meat, rather than a vegetarian or pork-free diet, substantially burdened his religious

12

exercise); Shakur v. Schriro, 514 F.3d 878, 882 n.2 (9th Cir. 2008) ("Halal meat is ritually slaughtered and prepared according to Islamic specifications. Muslims are instructed to eat meat only if it is Halal.") Courts in other contexts have held that providing even a vegetarian diet to a Muslim inmate may be insufficient to satisfy the requirement to provide for a religious dietary accommodation. Shakur, 514 F.33, supra, at 882, 888 (prison may be required to offer kosher/halal diet containing meat to Muslim inmate whose vegetarian halal diet causes gastrointestinal discomfort, which interferes with the "state of 'purity and cleanliness' needed for Muslim prayer").

20. Third Circuit precedent suggests that Muslim inmates in fact must be provided with vegetarian diets if the institution declines to provide them with halal meat diets. Williams v. Morton, 343 F.3d 212, 218 (3d Cir. 2003) (prison not required to provide halal meat to Muslim inmates given policy of "providing vegetarian meals" instead); Adekoya v. Chertoff, 431 Fed. Appx. 85, 88 (3d Cir. 2011) (plaintiff failed to make out a First Amendment claim where "he repeatedly alleged that he did not receive halal meals while at the BCJ" but "did not allege that he was denied vegetarian meals or otherwise prevented from practicing his religion").

21. In light of the case law, the Court declines to find that Defendant is entitled to summary judgment. There is a

genuine issue of material fact as to whether Plaintiff's (uncontestedly) sincerely held religious belief that he may not consume non-pork meat that is not certified halal or otherwise said to be ritually slaughtered and prepared in accordance with the tenets of Islam is adequately accommodated where Defendant and S.C.C.F. "denied [Plaintiff] vegetarian meals[,]" Adekoya, 431 Fed. Appx., supra, at 88.

22. The Court also finds that there is a genuine issue of material fact as to whether Defendant's "information and belief," apparently based on the Quran-Islam article, that Muslims do not require halal meat, but rather only non-pork meat, to be in compliance with the tenets of their faith, is accurate and applicable to Plaintiff, who states that he believes his religion requires him to abstain from eating meat slaughtered without having the name of God pronounced upon it. Generally, the Court is reluctant to credit scattered internet articles as authoritative; only an expert witness can address the prevailing religious requirements when they are a matter of dispute.

23. Therefore, the Court will deny Defendant's motion for summary judgment.

24. Because the Court is denying Defendant's motion for summary judgment, the Court will also deny as moot Plaintiff's motion for a stay to allow him additional time to prepare a

response to Defendant's motion.

25. For the reasons set forth above, the Court will GRANT
IN PART Defendant's Motion and vacate the default judgment; DENY
Plaintiff's Motion for Default Judgment; DENY IN PART
Defendant's Motion and decline to grant summary judgment to
Defendant; and DENY as moot Plaintiff's Motion for a Stay.

26. An accompanying order will be entered.


**March 27, 2017**                              **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                Chief U.S. District Judge